**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0124-20

STEVEN BAGLIVO,

    Plaintiff-Respondent,

v.

KIMBERLY BAGLIVO,

    Defendant-Appellant.

_____

Submitted September 28, 2021 – Decided October 7, 2021

Before Judges Fisher and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FM-01-0938-08.

Horn Law Group, LLC, attorneys for appellant (Jessica R. Carosiello, of counsel and on the briefs).

Biel & Stiles, PA, attorneys for respondent (Mark Biel, on the brief).

PER CURIAM

The parties were married in 1989. Plaintiff Steven Baglivo commenced this divorce action in April 2008, kicking off four years of litigation – including three lengthy mediation sessions in 2011 – before the parties entered into a property settlement agreement and were divorced by a judgment entered in February 2012. Of the many resolved issues, Steven agreed and was required to pay defendant Kimberly Baglivo $5,000 in monthly permanent alimony. The parties also waived any right to seek a modification of the alimony obligation "irrespective of any change of circumstances" in their finances, assets or liabilities.

Steven's income – according to case information statements and discovery provided and obtained during the lengthy pretrial proceedings – was based on his ownership of Statewide Commercial Cleaning, LLC, which was engaged in cleaning and restoration services for residences, commercial enterprises, and governmental entities. Kimberly worked part-time as a waitress at a local restaurant. During the course of the prejudgment proceedings, Steven asserted that Statewide was on the verge of going out of business. He filed a case information statement that asserted Statewide had a negative value of $823,621, and that he had gross liabilities of nearly one million dollars and a net worth of negative $455,137.52.

A-0124-20

In an August 2011 case information statement, Steven referred to Paramount Public Adjusters and Eastern Financial, businesses with Florida addresses. In response to Kimberly's inquiries, Steven emphatically certified those companies "have no value," and that Kimberly's assertion that Steven made a two-million-dollar investment in Florida was not only "speculat[ive]" but "isn't true." Steven instead asserted that a friend, Sobhman Arafa, held all Eastern Capital's stock and occasionally sought Steven's assistance to "handle[] property losses." Arafa, according to Steven, also asked him to take a non-paying position on Eastern Capital's board of directors. Steven also alleged that, in forming Paramount, he hoped to create a professional firm of licensed adjusters, established by his existing contacts in Florida, "to help supplement [his] personal income which has declined dramatically" in New Jersey. He stated that Paramount had virtually no chance of being profitable due to a failed business and personal relationship with another Florida friend, and that Paramount was valueless. The August 2011 case information statement also referred to Paramount and Eastern Capital not as assets but as employers.

Prior to the parties entering into their property settlement agreement, an accounting firm interviewed Steven and reviewed his financial information. The firm took the position that Statewide was "insolvent" and unable to correct its

3

insolvency without some "material infusion of capital." In reviewing Steven's personal earnings, the firm determined that his average annual earnings for the four-year period between 2007 and 2010 was $107,143. The accounting firm concluded that Statewide's anticipated future earnings "would barely provide [Steven] with a salary" and overall Statewide "had no value as of April 18, 2008 and as of June 30, 2011."

In or around August 2017 – years after the parties' final judgment of divorce – Kimberly obtained copies of Steven's deposition taken during Florida state proceedings for Benichay v. Eastern Capital Financial Services, LLC & Steve Baglivo. This deposition testimony prompted Kimberly's renewed concerns about whether Steven had been forthcoming about his financial situation in the proceedings leading up to the judgment of divorce. For example, Steven testified at the Florida deposition that Arafa introduced him to an individual named Michael Benichay, and that both were working together around 2009 and 2010 for an entity known as Direct Auto Brokers.

Steven also testified that when Eastern Capital was established soon after his involvement with Direct Auto, he became responsible for transferring money to either of the two entities based on instructions from Arafa; he claims he did not handle any of Eastern Capital's business operations until 2012 when Arafa

4

became ill. He also testified that he believed Eastern Capital and Direct Auto to be "sewn together under the management of those two entities" by Arafa and Benichay. Steven acknowledged that he ultimately became partners with Arafa in Eastern Capital, and that he conducted funding operations while Arafa handled the remaining operations. When confronted with a K-1 that stated his partnership income from Eastern Capital in 2010, Steven responded that he was unable to recall exactly when around 2010 or 2011 his duties as an Eastern Capital partner began.

Steven also testified that he instructed Herman Shifflet, Statewide's operations director, to open an independent account for placement of Steven's funds. Allegedly unknown to Steven, Shifflet executed these instructions by establishing a company named SCC New Jersey, LLC, in 2008. Steven lent money from SCC New Jersey's account to Direct Auto from approximately 2009 to 2012 for "auto financing." The deposition testimony also suggested that transfers were made from SCC New Jersey's account from March to August 2012 in an amount greater than three million dollars.

Kimberly also obtained a transcript of deposition testimony given by Arafa in the Florida proceedings. Arafa testified he believed Steven had personally contributed approximately two million dollars to Direct Auto, and

A-0124-20

that near the end of that entity's existence, Steven "transferred money from Direct Auto Brokers into Eastern [Capital] and he stopped paying" Direct Auto for loans that were due, ultimately draining that company of capital. Arafa testified that Steven never personally guaranteed any of the debts of Direct Auto or Eastern Capital because:

> [Steven] said he had issues with an ongoing divorce situation and he couldn't have his name on anything when we started Direct Auto Brokers. When we started Eastern, it was the same thing, he said, "I can't have my name anywhere. I can't have anything – I'm working on a few legal stuff." I didn't question it. And I said, when your things get resolved – he said he had issues with his divorce. And his name was nowhere in the very beginning. Not on Eastern's corporate books, not on Direct's corporate books, the corporate filings or whatever.

It was not until around 2012, after the divorce proceedings had been finalized, that Steven, according to Arafa, "turned 180" and stated to Arafa that he didn't "need to hide anymore."

Based on this and other information uncovered about the Florida lawsuit, Kimberly moved in February 2018 to vacate the judgment of divorce and for a modification of the alimony obligation. The judge held the matter in abeyance, allowing the parties to engage in discovery about Kimberly's allegations and Steven's denials.

6

A-0124-20

After more than a year of discovery, Steven moved to dismiss Kimberly's claim for relief. In response, among other things, Kimberly argued that a plenary hearing was required. The judge ruled in Steven's favor without conducting a hearing.

Kimberly appeals, arguing among other things that the trial judge mistakenly exercised her discretion in ruling on the papers rather than conducting a plenary hearing. We agree.

In denying Kimberly's request for relief from the 2012 divorce judgment, the judge seems to have based her ruling on two things. First, that the passage of eight years from entry of judgment counseled that relief be "very sparingly" granted. We disagree. Certainly, a court's vacatur power may be appropriately limited or denied when a movant has unreasonably delayed in seeking relief, see R. 4:50-2, but Kimberly didn't wait eight years from the time she had strong reasons to doubt the accuracy of the information provided by Steven prior to the entry of judgment. She claims to have learned of Steven's Florida deposition, which triggered her fraud allegations, in August 2017,[1] and she moved for relief in February 2018. We reject Steven's argument and the judge's holding that this

---

[1] Arafa's and Steven's depositions in the Florida matter were taken in May and June 2017, respectively.

A-0124-20

six-month passage of time was fatal to Kimberly's motion for relief from the 2012 judgment.

Second, the judge erred in failing to conduct a plenary hearing about the significance of the considerable evidence that supported Kimberly's contention that Steven misrepresented or withheld vital information about his financial situation in the prejudgment proceedings. Ultimately, without any deep analysis into the parties' competing allegations – except to note that "extensive" documents were presented "in support of each party's position" – the judge concluded that Kimberly's showing was not substantial enough to warrant relief. That is, the judge appears to have recognized there was a factual dispute emanating from what she referred to as the parties' "dizzying" and extensive submissions but that "in the end" Kimberly failed to "set forth sufficient divergence in accounting . . . to convince this court that any fraud or misrepresentation has been occasioned by" Steven. What the judge meant by this "divergence" went undescribed. And the judge failed to explain how this undescribed divergence lacked sufficient substance to warrant deeper examination at a plenary hearing. We find nothing insubstantial about the allegation – which finds support in the record – that Steven failed to disclose his access to or possession of two or three million dollars in out-of-state businesses

8

when he had alleged prior to the entry of judgment that Statewide was on the verge of bankruptcy.

The judge's conclusory statements about the factual record are inadequate to support the denial of relief. Kimberly was entitled to a hearing at which the sufficiency of her allegations – as well as the sufficiency of Steven's opposing assertions – could be illuminated and tested.

The order under review is vacated and the matter remanded for a plenary hearing.[2]

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] We note that Kimberly also appeals the denial of her motion for counsel fees. In light of our mandate, we need not reach this issue except to observe that Kimberly's application for fees may be entertained again in the trial court.

A-0124-20